WILLIAMS, J.
(dissenting). The relator was appointed April 18, 1896, and was removed May 30, 1896, without any hearing being had upon notice to the relator upon charges made. He was an honorably discharged sailor of the navy of the United States, having enlisted March 17, 1863, as a first-class messenger boy, and having been discharged February 23, 1864. When he was appointed he informed one of the board—Commissioner McMillan— that he was a veteran. The application for the writ was made upon notice to the park board, served about -July 1, 1896. The board claimed that the removal of relator was for misconduct; that the board did not know that he was a veteran at the time of his removal; that he was not entitled to protection from removal under the “Veteran Laws” (so called), because he did not hold a position by appointment, and did not receive a salary, but was compensated by day wages; that mandamus was not the proper remedy; and that he made no demand that the board reinstate him before applying to the court for, the mandamus. The court denied the motion, in reliance upon the cases decided under the veteran acts as they existed prior to 1896. There were two such acts in force at the same time, the one being chapter 312, Laws 1884, amended by chapter 716, Laws 1894; and the other being chapter 119, Laws 1888, amended by chapter 577, Laws 1892. Under these acts it was held that a veteran was entitled to protection from removal only when he held his position by appointment, and received a salary, and was not within the terms of the statute when he was merely an employé, compensated for his services by daily wages. Meyers v. City of New York, 69 Hun, 291, 23 N. Y. Supp. 484; Wagner v. Collis. 7 App. Div. 203, 40 N. Y. Supp. 171. But the acts of 1884 and 1894 were further amended by chapter 821, Laws 1896, so as to include within its protection employés paid by day wages, as well as appointees who receive a salary. This amendment of 1896 became a law May 21, 1896, nine days before the re *402 lator was removed. So far as applicable here, the act as so amended reads as follows:
“Section 1. In every public department and upon all public works of the state of New York, and of the cities, counties, towns and villages thereof, * * * honorably discharged Union soldiers, sailors and marines shall be preferred for appointment, employment and promotion. * * * And no person holding a position by appointment or employment, * * * and receiving a salary or per diem pay, * * * who is an honorably discharged soldier, sailor or marine, having served,” etc., “shall be removed from such position or employment, except for incompetency or misconduct shown after a hearing upon due notice, upon the charge made, and with right to such employs or appointee to a review by writ of certiorari. A refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine, or a reduction of his compensation intended to bring about his resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine, shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. * * *
“Sec. 2. All acts or parts of acts inconsistent with the provisions of this act are hereby repealed.”
The facts appearing in the papers before the cburt clearly brought the relator within the provisions of the statute, as so amended in 1896, and rendered his removal unauthorized and improper. He was entitled to a hearing upon notice, upon the charges agains't him, before he could be removed. The cases relied upon by the court in denying the motion were inapplicable under this amended statute. The relator was removed without any hearing whatever, and was, therefore, entitled to be reinstated in the position. The only question is as to what remedy the relator might have for such reinstatement. The statute, as amended in 1896, gives the veteran •a remedy by writ of certiorari to review the action of the board in removing him, and it fails to mention the remedy by mandamus, in connection with such removal. The amendment of 1894 did refer to the remedy by mandamus as an existing remedy which the veteran might have for such removal, but the amendment of 1896 ■changes the law in this respect, and provides the remedy by man■damus may be had for righting certain other wrongs, viz. a refusal to allow the preference provided for in the act, and a reduction of ■a veteran’s compensation, with intent to bring about his resignation ; but in this connection makes no reference, to an unauthorized removal of the veteran. Under the law as it existed prior to the amendment of 1896, this remedy was frequently used in cases •of unauthorized removal, as appears by an examination of the cases; ■and no objection seems ever to have been raised to it. People v. Morton, 148 N. Y. 156, 42 N. E. 538; People v. Brookfield, 2 App. Div. 299, 37 N. Y. Supp. 718; People v. Brookfield, 6 App. Div. 445, 39 N. Y. Supp. 677. In these cases the writs were denied, and the orders affirmed on appeal, but no question was made that the remedy by mandamus was not proper for the protection of a veteran, if he was entitled to protection at all. The change in the statute as to this remedy, by the amendment of 1896, was peculiar, and yet, considering the language of the two amendments of 1894 and 1896, it may well be doubted if the legislature intended, by .the change in 1896, to limit the remedy of the veteran for an *403 authorized removal to that of certiorari, and to deprive him of the remedy by mandamus, which was recognized by the amendment of 1894 as one then existing. We see no reason why any technical rule should be applied to deprive the veteran of this remedy which he has heretofore had, and which will as effectually protect his rights now as the remedy by certiorari. We are inclined rather to hold that this remedy is still preserved, and was properly applied in this matter. Indeed, certiorari would furnish no remedy at all where there was no hearing, but removal made without any hearing whatever.
It is, however, said that the motion was properly denied by the court because it did not appear that the respondents had, before the motion was made, been requested to restore the relator to the position from which they had removed him, and had refused to comply with such request; that there had been a demand and refusal to perform the act sought to be enforced by the writ of mandamus. The general rule undoubtedly is that “a demand and refusal is necessary, that previous to the making of the application to the court for the writ to command the performance of a particular act an express and distinct command or request to perform it must be made by the prosecutor to the defendant, who must have refused to comply with such demand, either in distinct terms or by conduct from which a refusal can be conclusively implied, it being due to the defendant to have the option of either doing or refusing to do that which is required of him before an application shall be made to the court for the purpose of compelling him.” 14 Am. & Eng. Enc. Law, 106. This rule is not universal, however. There are exceptions to it. The application of this rule here would be merely technical, and could serve no good purpose. The reason of the rule is that a request or a demand might be followed by a compliance, rather than a refusal, of the request or demand, and the expense and trouble of the application to the court would Then be rendered unnecessary. . There was no such reason apparent in this matter, and the denial of the motion was not put upon any such ground by the learned judge before whom the motion was made. The respondents were chargeable with knowledge <of the amendment of 1896 to the veteran act. It is not disputed that one of the respondents was informed at the time the relator was appointed that he was a veteran, and yet they removed and discharged him, contrary to the .provisions of the. statute, and they have ever since resisted strenuously his efforts for a reinstatement, and are still doing so. Whether he was properly removed, and whether he is entitled to be reinstated, is, upon the conceded facts, a matter of law, and not of fact. They expressed their judgment as to the law when they removed him, and, having performed the act which they then claimed and now claim they had a legal right to perform, it would have been an idle ceremony for the relator to request and demand that they reverse their action, and reinstate him in his position, before the commencement of this proceeding to compel such reinstatement. It has frequently been held that a mandamus may be issued without an express demand and refusal, *404 when it clearly appears that the party did not intend to perform the act the performance of which is sought to be enforced. In Palmer v. Stacy, 44 Iowa, 340, the plaintiff was the owner of a judgment against the town. There was no property of the town subject to execution, and the officers of the town neglected to take any steps to raise the money to pay the judgment. It was held that a mandamus should be issued requiring the officers to levy the tax, raise the money, and pay the judgment, and that no demand was necessary; the record clearly showing the intention on' the part of the officers not to levy the tax, which was enough to authorize the issue of the writ. In Com. v. Commissioners of Allegheny Co., 37 Pa. St. 237, the relator held bonds issued by the county, upon which the interest remained unpaid, and a mandamus was issued to compel the commissioners to levy a tax for the payment of such interest. It was held that no demand of and refusal by the commissioners to perform this duty before issuing of the writ was necessary, because it was the neglect of an official duty, and it appeared that they did not intend to perform that duty. In Attorney General v. City of Boston, 123 Mass. 460, a mandamus-was issued to compel the city to continue to collect tolls upon a ferry. There was no request or refusal, but the court held it was unnecessary, the city having distinctly manifested its intention not to perform a definite public duty required of it by law. Other cases might be cited, but these are sufficient to illustrate the exceptions to the general rule, so far as they are material to the inquiry we are here pursuing. When a request and refusal, before applying to the court for a mandamus, would be a mere idle ceremony, they are not a prerequisite. Here the respondents had, as clearly as they could possibly do, indicated their intention to remove the relator from his position, and keep him out. The statute of 1896 was clear. The duty of the respondents under it, in view of the fact that the relator was a veteran, and entitled to the protection of this statute, was clear to give him a hearing upon notice as to the charges before removing him, and yet they removed him without any hearing at all, and thus clearly indicated then-intention to disregard the law, and not to comply with their duty under it.
For the reasons herein suggested, the order appealed from ■ was wrong, and should be reversed, with costs to the appellant, and the motion be granted, with costs.